IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| | * | |
| ANITHIA RHODES, | * | |
| Plaintiff, | * | |
| | * | |
| | * | |
| v. | * | Civil Action No. 12-cv-03172-AW |
| | * | |
| MONTGOMERY COUNTY | * | |
| DEPARTMENT OF CORRECTIONS AND | * | |
| REHABILITATION, *et al.*, | * | |
| Defendants. | * | |

*******************************************************************************

## MEMORANDUM OPINION

Pending before the Court is Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, Doc. No. 9, and Plaintiff's Motion for leave to file a proposed Amended Complaint, Doc. No. 16.  The Court has reviewed the motion papers and concludes that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2011).  For the reasons discussed below, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, will be GRANTED-IN-PART and DENIED-IN-PART, and Plaintiff's Motion for Leave to file a proposed Amended Complaint will be GRANTED-IN-PART and DENIED-IN-PART.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background

The following factual background is drawn from the Complaint, the proposed Amended Complaint, and the motion papers and attached exhibits.  Plaintiff Anithia Rhodes was employed as a correctional officer with Defendant Montgomery County Department of Corrections and Rehabilitation (MCDCR) from May 2005 until August 2011.  MCDCR is controlled and operated by Montgomery County Government (MCG).  Defendant Montgomery County Police

Department (MCPD) is also controlled and operated by MCG.  Defendant Ricky Wright is the

disability program manager for MCG, and Defendant Captain Patricia Walker is the Director of

the MCPD Personnel Division.

Rhodes was injured while participating in a training exercise with MCDCR on September

24, 2009.  After extensive medical testing and extended hospital stays, Rhodes was diagnosed

with right-side weakness prone to paralysis and loss of control.  MCDCR's physician determined

that Rhodes could no longer work as a correctional officer due to safety concerns.  As a result,

Rhodes was absent from her position from September 25, 2009 until November 2010.  During

that time, Rhodes exhausted all the leave afforded to her, including the leave that was donated

from fellow county workers to ensure that she could remain with the department.

In or about November 2010, MCDCR assigned Rhodes to light duty status as a principal

administrative aide at its pretrial services division.  MCDCR assigned Rhodes the job in

accordance with the Collective Bargaining Agreement between the Municipal and County

Government Employees (hereinafter, the MCGEO) and the MCG.  Rhodes's duties included

telephone and visitor reception, making referrals, sending reports to the courts and attorneys,

maintaining the intake rotation list, assigning cases to caseworkers, checking the Integrated

Justice Information System, running warrant checks, and typing victim letters.

On March 14, 2011 Rhode received a correspondence from MCDCR Human Resources

Manager Ivonne Gutierrez-Anglin informing her that the light duty assignment would end on or

about April 11, 2011, and that the department would no longer have a light duty work

assignment.  Rhodes was told that if she could not return to full duty work on or before April 11,

2011, she should speak with MCG's disability program manager, Defendant Ricky Wright.

As of about March 31, 2011, and pursuant to the advice of MCDCR's physician, Rhodes was unable to return to her position as a correctional officer. She therefore visited Wright's office in the Occupational Medical Services department for a meeting.[1] In their meeting, Wright explained the process of obtaining reasonable accommodation and how to exercise priority placement for any vacant positions. Wright also provided Rhodes a list of all vacant positions. Rhodes claims to have chosen several vacant Office Service Coordinator (OSC) positions, but applied for one in particular, the 5th District OSC position with MCPD (hereinafter, "the 5th District position"). Rhodes understood that with the reasonable accommodation she would be able to stay with the public safety department and maintain her status with the MCGEO. Given her previous experience in a light duty assignment, Rhodes believed she was well qualified and met the minimum qualifications for the 5th District position, which was under the direction of Defendant Captain Walker.

Rhodes waited and heard no response from Walker or MCPD regarding the 5th District position. Beginning on May 2, 2011, Rhodes made several phone calls to Wright to inquire about not having received the background information packet from MCPD. At this time, Rhodes was utilizing personal leave, and MCPD representatives told her the leave would not be reimbursed. Rhodes was anxious and sought to expedite the application process for the 5th District position, and therefore told Wright that she was willing to pick up the background information packet.

As part of her previous employment with MCG and MCDCR, Rhodes had routinely undergone background checks. It was MCG's policy to have updated and verified clearance status for its employees, and Rhodes contends that she never had an unsuccessful background

---

[1] It is not clear from the Complaint or proposed Amended Complaint when this meeting took place. However, according to Rhodes's affidavit and a reasonable accommodation form attached to her opposition brief, it appears to have occurred on April 28, 2011. Doc. Nos. 14-1 and 14-3.

check.  Rhodes knew the background checks could take up to five weeks, but that candidates are typically contacted with regard to the investigation.  After five weeks without hearing anything from MCPD or Walker, Rhodes became frustrated, but was assured by Wright that she would receive some correspondence from them.

In frustration and while waiting to hear about her application for the 5th District position, Rhodes began to apply for positions listed on the MCG website.  After many months of no response and no feedback, Rhodes contacted MCGEO to begin the grievance process in or about April 2011.[2]  Rhodes continued communicating with Wright, however, and expressed her concerns that she should be granted a meeting or an opportunity to discuss the 5th District position.  Shortly thereafter, MCPD and Walker called Rhodes for an interview.  Rhodes interviewed before a three-member panel, but became confused when the interviewers inquired about a police dispatcher position and an overnight shift.  According to Rhodes, the interview had nothing to do with the 5th District position, as the questions pertained to different duties and different hours.

On July 1, 2011, Rhodes received a call from MCPD representative Susan Burke regarding the issuance of the background information packet.  Rhodes went to the MCPD location in Rockville to pick up the packet and completed and returned the packet to MCPD on July 5, 2011.  In or about August 2011, Rhodes became aware that she no longer had insurance coverage.  Rhodes contacted Wright to provide him with this information, and Wright informed Rhodes that the MCPD and Walker had concerns about information that came up during Rhodes's background check.  When Rhodes asked Wright to identify the concerns, Wright stated that such information would have to come from the MCPD and Walker.

---

[2] This timeline is likely incorrect, however, as Rhodes only first met with Wright in April 2011.

On August 1, 2011 Rhodes filed an Intake Questionnaire with the Equal Employment Opportunity Commission (EEOC).  Rhodes identified MCDCR as her employer in the questionnaire.  She checked "Disability" as the basis of her claim for employment discrimination, but did not check "Retaliation."  Rhodes complained that in actions taken in June and July 2011, the MCG and MCPD had failed to make reasonable accommodation under the Americans with Disabilities Act (ADA), had discontinued communication with her, and had asked her to select a different position without any reason.  Rhodes identified her disability as right side weakness as a result of injury during employment training, stated that she asked Wright in April 2011 for a change in position based on her disability, and that a reassignment with priority consideration was completed.

Rhodes further alleges in her Complaint in this action that Walker and MCPD never recognized her as a qualified applicant despite her being well qualified for the 5th District position.  Rhodes claims that at the time of her application for the 5th District position, there were no other available candidates.  She also claims that Walker was holding the position for a friend of hers.

Rhodes alleges that in response to her EEOC complaint, Walker and MCPD—for the first time—stated that Rhodes wanted a "source" with regards to the background investigation.  Rhodes insists she has no interest in the disclosure of sources and that her interest in the background check simply related to its content.  Rhodes believes Defendants have a policy in which applicants are provided with reasons for non-selection, and that Walker and MCPD have no reason to deny Rhodes the information.  As of filing the Complaint, Rhodes still had not been provided any information from Walker or MCPD despite repeated attempts to obtain an explanation for her non-selection.

During this same time period, Wright followed up with Rhodes and asked her if there was any information that she had not reported in the background information packet.  Rhodes assured Wright that all information had been answered truthfully.  Shortly thereafter, Wright asked Rhodes if she would be interested in an alternative OSC position in the Office of Human Resources (OHR).  Rhodes states she had no choice but to accept the offer, as she would otherwise be unemployed and without health insurance.  Rhodes does not specify in her Complaint when she accepted this position with OHR.  However, the EEOC Charge of Discrimination indicates that Rhodes accepted the OHR position about seven weeks after returning the background information packet to MCPD, which would have been late August 2011.

Rhodes claims that when she was given no choice but to take the position with OHR, she was not treated fairly and was discriminated against under the ADA regarding fringe benefits, rate of pay, and other terms of employment, including union representation.  Specifically, she would have had union representation in the 5th District position.  She also would have been entitled to a Public Safety retirement package and a superior rate of pay.  She lost these benefits, however, when she was moved to the non-union OHR position.

As discussed above, Rhodes filed an Intake Questionnaire with the EEOC on August 1, 2011.  On November 30, 2011, Rhodes signed and submitted an EEOC Charge of Discrimination.  The Charge named the MCPD as the employer responsible for the discrimination.  Apparently, MCDCR was originally named as the employer responsible in the Charge, but was crossed out.  Rhodes charged that discrimination against her was based on her disability, and she did not check the retaliation box.  Rhodes received a notice of the Right to Sue on July 30, 2012 from the EEOC.

Rhodes brings two counts against Defendants: (1) discrimination on the basis of disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*; and (2) retaliation in violation of the ADA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).  In support of her discrimination claim, Rhodes alleges that Defendants failed to make reasonable accommodation.  Specifically, Rhodes alleges that she was never offered a "light duty permanent assignment."  In support of her retaliation claim, Rhodes alleges that Defendants denied her reasonable accommodation because she exercised her rights under the ADA.  Specifically, Rhodes claims that Defendants did not communicate with her regarding the status of the 5th District position, and that Rhodes's initiation of the EEOC complaint prompted Defendants to offer her the OHR position instead.  Rhodes seeks $250,000.00 in compensatory damages, attorney fees and costs, and other relief the Court deems appropriate.

### B.     Procedural Background

Plaintiff filed her Complaint in this Court on October 27, 2012.  On December 20, 2012, Defendants MCDCR, MCPD, Wright, and Walker filed the pending Motion to Dismiss, or in the Alternative, for Summary Judgment.  Defendants argue that Rhodes failed to exhaust her administrative remedies and that she failed to state a claim for disability discrimination or retaliation.  Defendants further argue that Rhodes failed to state a claim against the individual Defendants, Wright and Walker, and that the claims against MCDCR and MCPD should be dismissed because neither entity possesses the capacity to be sued.

Plaintiff filed her Response in opposition to Defendants' Motion on January 21, 2013.  Plaintiff conceded in her Response that MCDCR and MCPD were not proper parties, and thereafter filed a Motion for Leave to file a proposed Amended Complaint.  The proposed Amended Complaint is substantially similar to the original Complaint, with the following

7

exceptions: (1) Plaintiff names "Montgomery County Government" (MCG) as a Defendant and drops MCDCR and MCPD as Defendants; (2) she specifies that the individual Defendants are being sued in both their individual and official capacities; and (3) she specifies that she filed her charge with the EEOC on August 1, 2011, and that she has satisfied all administrative and judicial prerequisites to the initiation of this lawsuit.

Plaintiff's Motion for Leave also states that counsel for Defendants did not oppose it to the extent it sought to include Montgomery County Government as a Defendant. However, in Defendants' Reply brief on their Motion to Dismiss, they contend that the arguments made in their briefs apply with equal force to the claims made in the proposed Amended Complaint and those made against MCG. As such, Defendants argue that the proposed Amended Complaint should be dismissed as well. The pending motions have been fully briefed and are now ripe for the Court's consideration.

## II.   STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy Rule 8(a) of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In resolving a motion to dismiss, the Court should proceed in two steps. First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusions that receive no deference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* at 678. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

In the context of employment discrimination, the Supreme Court has clarified that pleadings need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002). To require otherwise would essentially create a "heightened pleading standard" under which a plaintiff without direct evidence of discrimination would need to plead a prima facie case even though he might uncover direct evidence during discovery. *Id.* at 511–12. This would create the "incongruous" result of requiring a plaintiff "to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* Furthermore, before discovery "it may be difficult to define the precise formulation of the required prima facie case in a particular

case." *Id.* at 512; *see also Twombly*, 550 U.S. at 569–70 (explaining that *Swierkiewicz* is consistent with more recent case law). Accordingly, courts in this district have held that "[i]n the employment discrimination context, asking for plausible grounds simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the claim." *Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 666 (D. Md. 2008) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks and alterations omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), the court may consider the Complaint, matters of public record, and documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The EEOC Charge of Discrimination attached to Defendant's Motion is integral to the Complaint and proposed Amended Complaint and Plaintiff has not contested its authenticity. *See, e.g.*, *Rodriguez v. Cellco P'ship*, No. WDQ-11-3299, 2012 WL 2904809, at *1 n.2 (D. Md. July 13, 2012); *White v. Mortg. Dynamics*, 528 F. Supp. 2d 576, 579 (D. Md. 2007). The Court also concludes that the EEOC Intake Questionnaire attached to Plaintiff's opposition brief is integral to the Complaint and proposed Amended Complaint.[3] Accordingly, the Court will consider the EEOC Intake Questionnaire and Charge of Discrimination without converting Defendant's Motion into one for summary judgment.

---

[3] The Intake Questionnaire is dated August 1, 2011. Doc. No. 14-2. Plaintiff claims in her Complaint that she first filed a complaint with the EEOC in August 2011, Doc. No. 1 ¶ 24, and in her Amended Complaint she states that she first filed with the EEOC on August 1, 2011, Doc. No. 16-1 ¶ 9. Furthermore, for the reasons discussed *infra* footnote 4, the Court concludes that the EEOC Intake Questionnaire is a "charge" within the meaning of the pertinent EEOC regulations.

III.     **ANALYSIS**

A.     Defendants MCDCR, MCPD, and MCG and Plaintiff's Motion for Leave to File a Proposed Amended Complaint

Defendants argue that MCDCR and MCPD are entities that do not have the capacity to sue or be sued, and therefore should be dismissed from this action.  *See, e.g.*, *Friendship Heights and the Hills v. Funger*, 289 A.2d 329, 331 (Md. 1972) (holding that special tax district created by statute could not maintain suit against private developers and municipalities regarding certain zoning agreements because the statute that created plaintiff did not expressly give it the capacity to sue or be sued); *Hines v. French*, 852 A.2d 1047, 1071 (Md. Ct. Spec. App. 2004) ("County police departments are agents of the State and should not be viewed as separate legal entities.").  In her Response, Plaintiff acknowledges that MCDCR and MCPD are not proper parties in this suit.  Doc. No. 14 at 18.  The Court will therefore dismiss MCDCR and MCPD from this action.

In her proposed Amended Complaint, Plaintiff has substituted "Montgomery County Government" (MCG) for MCDCR and MCPD.  Doc. No. 16-1.  Plaintiff and Defendants agree that Montgomery County has the capacity to sue or be sued.  Doc. No. 14 at 18; Doc. No. 9-1 at 11.  The Court will therefore interpret and analyze Plaintiff's claims against Montgomery County Government as if they were brought against Montgomery County.  For the reasons stated below, *infra* Part III.B, Plaintiff has stated a plausible claim of disability discrimination against Montgomery County.  Accordingly, in the interest of justice and pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, the Court will grant Plaintiff's Motion to Amend to the extent it asserts a claim of disability discrimination against Montgomery County.  Absent any arrangements between the parties for acceptance of service, Plaintiff will be granted thirty days to effectuate service of its Amended Complaint on Defendant Montgomery County.

B.     Discrimination Claim (Count I)

Defendants first argue that Plaintiff's discrimination claim should be dismissed because she has failed to exhaust her administrative remedies.  A failure by a plaintiff to exhaust administrative remedies concerning an ADA or Title VII claim deprives the courts of subject matter jurisdiction over the claim.  *Jones v. Calvert Grp., Ltd.,* 551 F.3d 297, 300–01 (4th Cir. 2009); *see also Fox v. Gen. Motors Corp.,* 247 F.3d 169, 176 (4th Cir. 2001) (recognizing that "[b]ecause the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases").  The contents of the charge with the EEOC determine the scope of the plaintiff's right to file a federal lawsuit.  *See Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 132 (4th Cir. 2002).  Generally, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent [employment discrimination] lawsuit."  *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996); *see also Bryant*, 288 F.3d at 132 ("[T]he scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination.").

Defendants argue that the individual Defendants should be dismissed from the suit because Plaintiff failed to name them in her EEOC charge.[4]  The Court agrees that Walker and

---

[4] The Court's references to Rhodes's "EEOC charge" include both the Intake Questionnaire and the Charge of Discrimination, as the Court concludes that the Intake Questionnaire contains sufficient information to be considered a charge under the pertinent regulations.  "[A] charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  29 C.F.R. § 1601.12(b).  Here, the Intake Questionnaire identified MCDCR, MCPD, and the Montgomery County Government and alleged that the Defendants had failed to make reasonable accommodation by placing her in an available position and asking her to seek a different position.  Doc. No. 14-2.  Furthermore, the EEOC Charge of Discrimination was signed and submitted less than four months later.  Doc. No. 9-2.  Under these circumstances, the Court believes that Rhodes intended to initiate an EEOC investigation on

Wright should be dismissed, but on different grounds.  The ADA does not provide a cause of action against individual employees because they are not "employers" within the meaning of the Act.  *See, e.g.*, *Jones v. Sternheimer*, 387 Fed. App'x 366, 368 (4th Cir. 2010); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999).  Rhodes also sues Wright and Walker in their official capacities in her proposed Amended Complaint.  Doc. No. 16-1.  However, suing these employees in their official capacity is the equivalent of suing the governmental Defendants.  *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004).  Because such official capacity claims would be redundant, the Court will dismiss the claims against individual Defendants Wright and Walker.  *See, e.g.*, *Harrison-Khatana v. Cannon*, No. DKC-11-3715, 2012 WL 5383314, at *2–3 (D. Md. Oct. 31, 2012); *Bradley v. Balt. Police Dep't*, No. JKB-11-1799, 2012 WL 4321738, at *2 (D. Md. Sept. 19, 2012).

With respect to MCDCR, MCPD, and MCG, Defendants argue that Rhodes has not exhausted her administrative remedies because the EEOC charge focuses solely on Plaintiff's application for placement in the 5th District position, but contains no allegations concerning the end of her light duty assignment or Defendants' failure to create a permanent light duty position for Plaintiff.  Doc. No. 9-1 at 9.  However, these allegations are reasonably related to Plaintiff's EEOC charge and would have been developed by reasonable investigation of the EEOC charge.  Accordingly, the Court concludes that Rhodes exhausted her administrative remedies with respect to her discrimination claim.

---

August 1, 2011 and the Intake Questionnaire is properly considered a charge of disability discrimination against Montgomery County.  *See, e.g.*, *Dixon v. Shasta Beverages, Inc.*, No. WDQ-12-0569, 2012 WL 4774808, at *4 (D. Md. Oct. 5, 2012) (concluding that intake questionnaire was a charge where it named the parties involved, checked the racial discrimination box, described the relevant incident and ongoing harassment, and defendant was informed of the general nature of the actions or practices); *Valderrama v. Honeywell Tech. Solutions, Inc.*, 437 F. Supp. 2d 658, 662–63 (D. Md. 2007) (concluding that intake questionnaire was not a charge where it failed to describe claim with clarity or precision and failed to reflect an intent to file a formal charge, particularly since the claim languished for two years following the filing of the questionnaire).

Defendants next claim that even if Rhodes has exhausted her administrative remedies, the Court should dismiss Count I for failure to state a claim.  The ADA prohibits covered employers from discriminating against an otherwise qualified employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The statute defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

The only conceivable basis for Rhodes's discrimination claim is that Defendants failed to provide her with reasonable accommodation.  *See id.* § 12112(b)(5); Doc. No. 1 ¶ 39 (claiming that Defendants never offered a light duty assignment or accommodated Plaintiff's request for such a position).  In a failure-to-accommodate case, an employee makes a prima facie case of discrimination by showing (1) that she is an individual with a disability within the meaning of the statute; (2) that the defendants had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position sought; and (4) that defendants refused to make such accommodation.  *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 Fed. App'x 314, 322 (4th Cir. 2011); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001).  The term "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position."  42 U.S.C. § 12111(9).

The Court concludes that Rhodes has pled sufficient facts on her failure-to-accommodate claim to survive Defendants' Motion to Dismiss.[5]  Defendants do not seriously dispute that Plaintiff adequately pled that she was disabled and that Montgomery County was aware of her disability.  She alleged that she suffers from right-side weakness prone to paralysis and loss of control.  Doc. No. 1 ¶ 9.  Defendants' physician diagnosed Rhodes's condition, and Rhodes and Defendants engaged in substantial discussions regarding her condition over the next several months.  *Id.* ¶¶ 10–13.  Furthermore, Rhodes sufficiently pleads that she was capable of performing and met the minimum qualifications for the desired 5th District MCPD position given her experience in light duty work from about November 2010 until about April 2011.  *Id.* ¶¶ 9–11, 14, 25.  Plaintiff has also adequately pled that Defendants denied her reasonable accommodation, as she repeatedly alleges throughout her Complaint and in her EEOC charge that Defendants stopped communicating with her, suggested that she apply for a different job, and did not offer her the 5th District position.  *Id.* ¶¶ 18–23, 26–30; Doc. No. 9-2; Doc. No. 14-2.[6]

In addition to her affidavit and the EEOC Intake Questionnaire, Plaintiff attaches two exhibits to her opposition brief: (1) an April 28, 2011 reassignment form signed by Plaintiff and Wright which states that Rhodes was provided with reasonable accommodation to a vacant position for which she was qualified; and (2) a portion of Defendants' rebuttal to the EEOC charge in which Defendants admit that Rhodes met the qualifications for the 5th District position

---

[5] As discussed above, Plaintiff's Complaint need not contain specific facts establishing a prima facie case of discrimination.  *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002).  Here, Plaintiff has pled sufficient facts such that her disability discrimination claim is plausible on its face.

[6] Defendants also claim that Rhodes failed to allege that the permanent light duty position was in existence at the time of her request.  Doc. No. 9-1 at 14.  It is not clear from Defendants' Motion how such an allegation is required to plead a plausible failure-to-accommodate claim, but even if it was, according to Plaintiff's pleadings, the 5th District position was in existence as of March or April 2011 when Rhodes allegedly first met with Wright and requested a light duty assignment.  Doc. No. 1 ¶¶ 13–14.  Regardless, given the sparse factual record before the Court, it is premature at this stage of the proceedings to determine whether the accommodation sought by Rhodes was reasonable.

but that she did not pass the required background check. Doc. Nos. 14-3 and 14-4. Defendants argue that these documents rebut Plaintiff's claim that she was qualified for the desired 5th District position. *See* Doc. No. 18 at 7–8. Even if Defendants' Motion was analyzed under the summary judgment standard, the Court concludes that there are disputed issues of material fact surrounding the circumstances in which Rhodes was denied the 5th District position, *see, e.g.*, Doc. No. 14-1, Rhodes Aff., and it would be premature to grant Defendants' Motion without some opportunity for discovery. Accordingly, the Court will deny Plaintiff's Motion to Dismiss, or in the Alternative, for Summary Judgment, to the extent her failure-to-accommodate claim is brought against Montgomery County.

C.      Retaliation Claim (Count II)

Although Rhodes exhausted her administrative remedies with respect to her disability claim, the Court concludes that she failed to do so on her retaliation claim. Rhodes did not file charges of retaliation in either the EEOC Intake Questionnaire or the EEOC Charge of Discrimination. *See* Doc. No. 14-2 at 3 (only checked box for basis of claim was "disability"); Doc. No. 9-2 (same). The administrative investigation the followed Plaintiff's EEOC charge could not be reasonably expected to have developed a basis for the retaliation claim that Plaintiff brings in this Court. Neither the Intake Questionnaire not the Charge of Discrimination allege any factual basis for a retaliation claim and there is no indication from the record that the EEOC undertook any investigation for retaliation in response to Plaintiff's discrimination charge. *See, e.g.*, *Bryant*, 288 F.3d at 133 ("Administrative investigation of retaliation . . . could not reasonably be expected to occur in light of [plaintiff's] sole charge of race discrimination, and the investigation of the complaint did not touch on any matters other than race discrimination."); *Lewis v. MV Transp., Inc.*, Case No. 12-cv-00983-AW, 2012 WL 4518541, at *5 (D. Md. Sept.

16

28, 2012) ("In short, the allegations in the [EEOC] charge fail to create a reasonable inference of retaliation. . . . [T]here is no presumption that evidence of retaliation will surface from the [EEOC] investigation of [disability] discrimination claims, or that retaliation claims otherwise fall within the scope of [disability] discrimination.").

Rhodes claims in conclusory fashion that "the basis of the retaliation was clearly related to her disabled status," Doc. No. 14 at 9, but she fails to explain how an investigation into retaliation could have been reasonably expected to occur given the statements in the EEOC charge.  Accordingly, the Court concludes that Rhodes failed to exhaust her administrative remedies on her retaliation claim.

Rhodes's claim also fails as a matter of law because she has not alleged a plausible claim for retaliation.  The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  Protected activity of an employee, therefore, can take the form of opposing any practice made unlawful under the ADA.  To establish a prima facie case for retaliation, Plaintiff must show that: (1) she engaged in protected activity; (2) the employer took a materially adverse employment action against her; and (3) there is a causal connection between the protected activity and the adverse employment action.  *See Rhoads*, 257 F.3d at 392.

The basis for Rhodes's retaliation claim appears to be that in response to her initiating a complaint with the EEOC, Defendants offered her the OHR position rather than the 5th District position she desired.  Doc. No. 1 ¶¶ 44–47.  Filing a complaint with the EEOC undoubtedly constitutes protected activity.  However, Plaintiff's retaliation claim fails because she has failed

to plead any factual basis for the conclusion that an adverse employment action was taken against her. "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (internal quotations omitted) (citations omitted). "This inquiry focuses on ultimate employment decisions, including 'hiring, granting leave, discharging, promoting, and compensating.'" *Wyckoff v. Maryland*, 522 F. Supp. 2d 730, 735 (D. Md. 2007) (quoting *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981)). To constitute an adverse employment action, the plaintiff "must show that a reasonable employee would have found the challenged action to be materially adverse." *Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 68 (2006). Defendants' action merely in *offering* Rhodes the OHR position cannot possible be characterized as an "adverse" employment action, particularly in light of the fact that Rhodes accepted the position.

To the extent Rhodes argues that the materially adverse employment action was not being offered her desired 5th District position, her claim must be dismissed because she has failed to plead a causal connection between that action and her protected activity. As of August 1, 2011, the date she filed the EEOC Intake Questionnaire, Rhodes was already complaining that Defendants had failed to place her in the desired 5th District position. *See* Doc. No. 14-2. Likewise, in her November 30, 2011 Charge of Discrimination, Rhodes was complaining that she had not been offered the 5th District position. Doc. No. 9-2. It is therefore apparent from Rhodes's EEOC charge as well as her Complaint and proposed Amended Complaint that the alleged refusal to offer her the desired position occurred *before* she engaged in the allegedly protected activity. *Lewis*, 2012 WL 4518541, at *5 (calling causation argument "illogical" where allegedly adverse action occurred before employee engaged in protected activity); *Tibbs v.*

18

*Balt. City Police Dept.*, No. RDB-11-1335, 2012 WL 3655564, at *6 (D. Md. Aug. 23, 2012)

(dismissing retaliation claim in part because the alleged adverse action occurred prior to the

protected activity).

Rhodes also claims that she engaged in protected activity "when she had informal

meetings with Defendant Wright to discuss the false allegations of the 'background check

issue.'" Doc. No. 14 at 13. Rhodes may have complained about the background check, but she

does not articulate how these discussions had anything to do with her disability or how the

background check itself could reasonably be viewed as unlawful under the ADA or Title VII.

*See Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2003) (to establish "protected activity" prong,

plaintiff must have subjective, good-faith belief that employer violated the law and the belief

must be objectively reasonably in light of the facts). Finally, Rhodes contends that she suffered

adverse employment action when Defendants informed her that she should seek another position

and "falsely asserted" that there was an issue with her background check. Doc. No. 14 at 14. As

discussed above, Plaintiff's complaint that she did not receive the desired 5th District position

predated any conceivable retaliatory action by Defendants. Accordingly, Plaintiff's retaliation

claim will be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED-IN-PART and

DENIED-IN-PART, and Plaintiff's Motion for Leave is GRANTED-IN-PART and DENIED-

IN-PART. A separate Order will follow.


March 1, 2013                                              /s/
       Date                                 Alexander Williams, Jr.
                                            UNITED STATES DISTRICT JUDGE